UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GINGER K. GEOFFREY,

                              Plaintiff,

                                                                            **Hon. Hugh B. Scott**

                                v.

                                                                            04CV570A

                                                                          **Report**
                                                                            &**&**
ADELPHIA COMMUNICATIONS                   **Recommendation**
CORPORATION,

                              Defendant(s).
_____

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 4, Sept. 7, 2004). The instant matter before the Court is defendant Adelphia

Communications Corporation's ("Adelphia" or "defendant") motion for summary judgment

dismissing the Complaint in this employment discrimination action (Docket No. 14[1]). The Court

issued (and later amended) a briefing schedule for this motion, with responses due by

---

[1]In support of this motion, defendant filed its Statement of Facts, Docket No. 16, Appendices to that Statement, Docket Nos. 17-18, the Affidavit of Jason Bristol, Docket No. 19, an attorney's Affirmation, Docket No. 20, a Memorandum of Law, Docket No. 15, reply Statement with exhibits, Docket Nos. 26-28, and Reply Memorandum of Law, Docket No. 29. The initial Memorandum also indicated that defendant's motion was supported by an Affidavit of Robert Koshinski, Docket No. 15, at 1; see Docket No. 21, Order, n.1, but no such document was filed, but excerpts from his deposition were included with the exhibits, Docket No. 17, Ex. A.
     In opposition, plaintiff submitted her Affidavit with exhibits, Docket Nos. 23, 24 (refiled with fully signed notary declaration), her Statement of Disputed Facts, Docket No. 23, and Memorandum of Law, Docket No. 24.

February 16, 2006, any reply by March 16, 2006 (Docket No. 21), and argument set for May 5, 2006 (Docket No. 22; see Docket No. 30).

## BACKGROUND

*Pleadings*

Plaintiff filed her gender-based Title VII Complaint on July 29, 2004 (Docket No. 1). Plaintiff was employed as a sportscaster and later field reporter on defendant's Empire Sports Network ("Empire"), a short lived regional sports television and radio network owned by defendant Adelphia Communications Corporation (see Docket No. 16, Def. Statement ¶¶ 2, 8). She was hired in April 2001 as a sportscaster, the only female in that position (Docket No. 1, Compl. ¶ 10). According to defendant's undisputed Statement of Material Facts, plaintiff was hired as a field reporter (Docket No. 16[2], Def. Statement ¶¶ 28, 29). She was terminated on or about August 19, 2003 (Docket No. 1, Compl. ¶ 11), with 27 other employees as part of a reduction in workforce. At that time, plaintiff was the only field reporter on staff (id. ¶ 12). Bob Trimble, an anchor on Empire's Fan TV had his anchor position eliminated when that show was canceled. Instead of terminating Trimble, defendant offered him a field reporter position at the same time defendant terminated plaintiff. (Id. ¶¶ 13-14.) Despite a seniority system for terminations, plaintiff was terminated while another male employee with less seniority, Jason

---

[2]Pursuant to this Court's Local Civil Rule 56.1(c), all material facts set forth in movant's Statement that are not controverted by opponent's Statement of Disputed Facts are deemed to be admitted. Plaintiff submitted a Statement of Disputed Facts, Docket No. 24, which disputes certain stated facts. Thus, under this Court's Rule, where plaintiff has not disputed a fact, it will be deemed admitted.

Bristol, was retained (id. ¶ 15). When plaintiff filed her Complaint, defendant had three television sportscasters and six radio[3] sportscasters, all male (id. ¶ 16).

Plaintiff alleges that she exhausted her administrative remedies with the Equal Employment Opportunity Commission and the New York State Division of Human Rights and obtained a right to sue letter from the EEOC (id. ¶¶ 7, 8, Ex. A). In her first cause of action, she alleges that defendant discriminated against her solely on the basis of her gender (id. ¶¶ 18-19) in violation of Title VII, 42 U.S.C. §§ 2000e, et seq., and other civil rights laws (see id. ¶ 23, citing 42 U.S.C. § 1981(a) for punitive damages). In her second cause of action, plaintiff alleges that defendant retaliated against her in violation of Title VII (id. ¶¶ 25-26). In her third cause of action, plaintiff seeks damages for gender discrimination in violation of New York State Human Rights Law, N.Y. Exec. Law § 296 (id. ¶¶ 31-34). The fourth cause of action alleges a parallel retaliation claim under the Human Rights Law, N.Y. Exec. Law § 296(1)(a) (id. ¶¶ 37-39). For each of these claims, plaintiff seeks back pay, front pay, liquidated and/or punitive damages, other compensatory damages, and attorneys' fees under 42 U.S.C. § 1988, and a declaration that defendant's conduct violated state and/or federal law (id. ¶¶ 22, 23, 28, 29, 35, 40, WHEREFORE clause). She also demands a jury trial (id. ¶ 41).

Defendant filed its Answer (Docket No. 3).

*Defendant's Motion for Summary Judgment*

On January 9, 2006, defendant filed the present motion for summary judgment (Docket No. 14). According to defendant's Statement of Undisputed Material Facts (Docket No. 16),

---

[3]This is the only reference to radio broadcasting in this matter. Plaintiff has sought to be a television reporter.

Empire was a subsidiary of defendant Adelphia (id. ¶ 1). Anchors at Empire did most of their work live, without the opportunity for editing (id. ¶ 6). Defendant claims that anchors also did reporting (id. ¶ 7) but plaintiff disputes this fact, pointing to the deposition testimony of general manager Robert Koshinski, who stated that he hired anchors to anchor while hiring reporters to report (Docket No. 23, Pl. Statement ¶ 1). In June 2002, defendant filed for bankruptcy and imposed a hiring freeze on Empire (Docket No. 16, Def. Statement ¶ 8), but Empire did replace employees during that freeze (id. ¶ 9).

*Plaintiff's Employment Experience*

Plaintiff prior experience was as a videotape editor for television stations in Tampa, Florida, Washington, DC, and Denver, Colorado (id. ¶¶ 10-12). In 1999, she worked at Southwest Sports Group Productions ("Southwest") in Arlington, Texas, as a reporter/editor (id. ¶ 13). Plaintiff claims that she was the fill-in anchor at Southwest (Docket No. 23, Pl. Statement ¶¶ 2-3), while defendant contends she only was allowed to fill in (Docket No. 16, Def. Statement ¶¶ 13, 14; Docket No. 26, Def. Reply Statement ¶ 14) and whether she was a fill-in there (or elsewhere) is not material to this action (Docket No. 26, Def. Reply Statement ¶ 2). Plaintiff was laid off from Southwest (Docket No. 16, Def. Statement ¶ 15). Plaintiff claims she was then hired as a sports anchor for CNN Headline News, where she wrote, edited and voiced her own reports, updating them every half hour throughout the evening (Docket No. 23, Pl. Statement ¶ 4), while defendant contends that she only produced taped voice-overs for CNN Headline News (Docket No. 16, Def. Statement ¶ 15) and assert the material issue is the amount of live anchoring experience plaintiff gained at CNN, which defendant concludes was none (Docket No. 26, Def. Reply Statement ¶ 4). This voice-over work was taped and edited in advance

(Docket No. 16, Def. Statement ¶ 17).  The parties dispute plaintiff's anchoring experience prior to her being hired by Empire; defendant contends that it was just one semester in college when she anchored the student-run television station, and two fill-in dates with Southwest (id. ¶ 18; Docket No. 26, Def. Reply Statement ¶ 5), plaintiff, however, cites her experience as "the" fill-in anchor at Southwest (Docket No. 23, Pl. Statement ¶ 5).

*Plaintiff at Empire*

Plaintiff applied in 1999 to work at Empire, but Empire did not hire her at that time, and retained her resume and demonstration tape for future reference (Docket No. 16, Def. Statement ¶¶ 21, 22).  In 2001, Empire advertised an opening for a reporter, and plaintiff was one of the candidates interviewed (id. ¶¶ 23, 27-28).  General manger Koshinski hired plaintiff as a reporter and she started on April 16, 2001 (id. ¶ 29).  Plaintiff claims that she was the only full-time female on-air reporter at Empire (Docket No. 23, Pl. Statement ¶ 6; but cf. Docket No. 16, Def. Statement ¶ 30 (plaintiff was not only female in Empire's production department); Docket No. 26, Def. Reply Statement ¶ 6 (denies plaintiff's statement is material)).  Plaintiff's immediate supervisor, John Demerle, and Koshinski had a good working relationship with plaintiff (Docket No. 16, Def. Statement ¶¶ 20, 33, 36, see id. ¶¶ 31-32) and she could not recall a single instance during her employment when she felt gender or sexually hostile work environment existed (id. ¶ 35).  Aside from her 2002 performance appraisal, which plaintiff disputes as being unfair (Docket No. 23, Pl. Statement ¶ 7; but cf. Docket No. 26, Def. Reply Statement ¶ 7 (denies materiality of 2002 appraisal)), plaintiff was treated fairly by Demerle (Docket No. 16, Def. Statement ¶ 34).  Plaintiff's early work at Empire involved taped broadcasts (id. ¶ 37), the parties dispute the quality of her work for live reporting (compare id. ¶¶ 37, 38 with Docket No. 23,

Pl. Statement ¶¶ 8, 9), the crux of this dispute arising from her 2002 performance appraisal (see Docket No. 24, Pl. Aff. Ex. D, DPD-0043, employer evaluation at 6 of 6).  Over time, plaintiff did more live work, with plaintiff claiming that she was doing 50% live and 50% taped work (Docket No. 23, Pl. Statement ¶ 10; but cf. Docket No. 16, Def. Statement ¶ 39).  Plaintiff worked exclusively as a reporter and never sought an anchor position or performed anchor duties (Docket No. 16, Def. Statement ¶¶ 46, 45, 47; but cf. Docket No. 23, Pl. Statement ¶ 14).  The parties dispute the result of plaintiff's practice anchor tape, and whether she was ready to be a fill-in anchor following that practice (compare Docket No. 16, Def. Statement ¶¶ 42-44 with Docket No. 23, Pl. Statement ¶¶ 11-13) and they dispute Demerle's evaluation of plaintiff's capabilities as an anchor (compare Docket No. 16, Def. Statement ¶ 48 with Docket No. 23, Pl. Statement ¶ 15).  Defendant replies that Demerle was not the decision-maker regarding whether to put plaintiff on the air as an anchor and no decision was made to place her on the air (Docket No. 26, Def. Reply Statement ¶¶ 11, 15).

*Rival Male Employees at Empire*

Plaintiff's Complaint alleges two male employees took over her job after her termination (see Docket No. 1, Compl. ¶¶ 13-15).  In early 2003, Empire had an opening for anchor and Empire hired Jason Bristol to be the anchor of the Weekend Empire Sports Report program and to do reporting during weekdays (Docket No. 16, Def. Statement ¶¶ 49-50).  Bristol had previous anchoring experience in Syracuse, New York, and Bridgeport, West Virginia (id. ¶ 51; see also Docket No. 19, Bristol Aff.).  Robert Trimble was hired in 1998 as anchor for the Fan TV program, and served as anchor from 1998 to 2003 (Docket No. 16, Def. Statement ¶ 53).  Prior to

joining Empire, Trimble had extensive anchor experience in Pittsburgh, Pennsylvania, and Detroit, Michigan (id. ¶ 54).

*Empire's Reduction in Force*

In 2003, defendant failed to renew affiliate agreements with other cable providers, reducing subscribers for Empire and thus reducing Empire's programming schedule (id. ¶¶ 55-56). Included in the reduction was the cancellation of Fan TV, then anchored by Trimble and Jim Brinson, and laying off twenty-seven employees (id. ¶¶ 57-58), including plaintiff. Defendant instructed Koshinski to retain only enough employees to produce a thirty-minute live Buffalo Sabres pre-game show, a sixty-minute live Sabres post-game show, and three live Empire Sports Report shows every day; this was the extent of Empire's produced programs after August 2003 (id. ¶ 59). Defendant contends that this new format made Empire's productions entirely live, requiring only two anchors and one reporter/anchor (id. ¶ 60). Plaintiff disputes this, asserting that there was no "reporter/anchor" position, rather Trimble was offered an already existing reporter position when Fan TV was canceled and that Trimble's position was always identified as that of a "reporter," only characterizing Trimble as a "reporter/anchor" after this action was commenced (Docket No. 23, Pl. Statement ¶¶ 16, 17)[4]. The on-air talent employed by Empire at the time of the lay off were plaintiff, Brinson, Trimble, Bristol, and Mike Robitaille (Docket No. 16, Def. Statement ¶ 64), with plaintiff as the only female on-air talent (id. ¶ 73). Defendant asserts that its lay off decisions were based upon company need, skill, experience, and seniority (Docket No. 16, Def. Statement ¶ 62). Plaintiff contends, however, that Empire

---

[4]Defendant moves to strike this Statement insofar as it is legal argument. It also argues that Trimble's title is immaterial. Docket No. 26, Def. Reply Statement ¶¶ 16-17, 22-23.

purposefully shifted Bristol to the weekday anchoring position and Trimble to an open reporter position, created by plaintiff's termination, effectively eliminating the only female on-air talent at Empire (Docket No. 23, Pl. Statement ¶¶ 19, 20, 21, 25, 26)[5]. Defendant states that plaintiff was let go because of her lack of anchoring skills and experience that Empire needed (Docket No. 16, Def. Statement ¶ 65). Plaintiff disputes this, arguing that her termination was due to shifting two male employees into her former position (Docket No. 23, Pl. Statement ¶ 20). Plaintiff was never told why her position was included in the reduction-in-force and did not ask why she was selected for termination (Docket No. 16, Def. Statement ¶ 66). Defendant asserts that plaintiff's job performance as a reporter was not a criteria for selecting her for termination, but her lack of experience as an anchor and her inability to anchor was the determining factor in that decision (id. ¶ 67); plaintiff disputes this (see Docket No. 23, Pl. Statement ¶ 21).

Defendant views Trimble's new position as reporter/anchor as similar to the reporter position held by plaintiff (Docket No. 16, Def. Statement ¶¶ 70, 69, 71). Plaintiff, however, repeats that there was no such position as "reporter/anchor" and that Trimble's personnel records identified the position only as that of a reporter (Docket No. 23, Pl. Statement ¶¶ 22-23). Defendant claims Trimble served as an anchor for its 6:30 evening Empire Sports Report and Sabres pre-game shows (Docket No. 16, Def. Statement ¶¶ 71-72), but plaintiff disputes ever seeing Trimble as an anchor (Docket No. 23, Pl. Statement ¶ 24).

After answering a question whether she should have been retained during the reduction-in-force because she was the only woman, plaintiff was asked "you don't think gender factored

---

[5]Defendant also moves to strike these Statements insofar as they are legal arguments and not based upon facts in the record but rather are based upon plaintiff's personal belief. Docket No. 26, Def. Reply Statement ¶¶ 18-21, 25-26.

into it?" which plaintiff answered "No" (Docket No. 18, Ex. C, Pl. Dep. Tr. at 158-59; cf. Docket No. 16, Def. Statement ¶ 75; Docket No. 26, Def. Reply App. at 158-59). Defendant contends that plaintiff testified that she did not believe that her gender was a factor in the decision to terminate her (Docket No. 16, Def. Statement ¶ 74; Docket No. 18, Ex. C, Pl. Dep. Tr. at 158-59). Plaintiff contends that her testimony was taken out of context and disputes defendant's contention (Docket No. 23, Pl. Statement ¶ 26; Docket No. 23, Pl. Aff. ¶ 38)[6]. Defendant points out that plaintiff did not believe that the reduction-in-force was to humiliate or injure her and that she was included in the reduction due to her job performance (Docket No. 16, Def. Statement ¶¶ 76-77). Plaintiff believed that the least senior employee, Bristol, should have been laid off instead of her and Trimble kept as an anchor (see id. ¶¶ 78-79; Docket No. 18, Ex. C, Pl. Dep. Tr. at 184).

Plaintiff answered interrogatories stating that the federal and state retaliation causes of action were erroneously alleged and were thus abandoned (Docket No. 16, Def. Statement ¶ 81; Docket No. 20, Def. Atty. Affirm. Ex. 5, at 10, Response to Interrogatory No. 11). Plaintiff testified that she did not intend to assert retaliation claims against defendant (Docket No. 16, Def. Statement ¶ 82; Docket No. 18, Ex. C, Pl. Dep. Tr. at 159-61). Plaintiff does not controvert this

---

[6]Plaintiff earlier was asked about the reasons for Koshinski's decision to terminate her, e.g., Docket No. 26, Def. Reply App. at 157-58. Plaintiff there denied that she believed that Koshinski's decision was based on her performance, or intended to injure plaintiff, or to humiliate her, id. at 158. Then defendant asked plaintiff if she alleged that she was the only female on-air talent, which plaintiff acknowledged, id., then she was asked "do you believe that you should have been retained in that reduction because you were a woman?" Id. Plaintiff answered no, id. at 159, and defendant then asked "No, you don't think gender factored into it?" and plaintiff again answered no, id. Defendant then asked if plaintiff's gender "should have given you an advantage," which plaintiff denied, and then defendant concluded this line of inquiry by asking "you just believe that it should have been a neutral issue?" which plaintiff said yes, id.

factual statement; therefore under this Court's Local Rules it is deemed admitted, W.D.N.Y. Loc. Civ. R. 56.1(c), and plaintiff's second and fourth causes of action should be **dismissed**.

*Parties' Contentions in This Motion*

Defendant now moves for summary judgment, arguing that plaintiff conceded that she believed gender was not a factor in defendant's decision to terminate her. Plaintiff was terminated for legitimate, non-discriminatory business reason, namely the large scale reduction in force and the eventual closing of Empire. The remaining positions at Empire required anchoring experience defendant contends plaintiff did not possess. Therefore, defendant concludes that plaintiff can not prove a prima facie case of gender discrimination in her termination. (Docket No. 15, Def. Memo. of Law at 6.) In reply, defendant contends that it met its burden of showing a legitimate, non-discriminatory business reason for terminating plaintiff (Docket No. 29, Def. Reply Memo. at 1).

Plaintiff argues that summary judgment should be denied because genuine issues of material fact exist (Docket No. 23, Pl. Memo. at 2, 8). She contends that she met her burden to establish a prima facie case of discrimination, namely that she was as qualified for the remaining positions at Empire as the male employees Bristol, Brinson, and Trimble; there is an inference of discrimination since she was the sole female of five on-air employees who was terminated with one remaining male employee (Trimble) who was offered plaintiff's former position the day after her termination (Docket No. 23, Pl. Memo. at 11-15). She argues that defendant's excuse is pretextual, that the reduction in force was a cover for a discriminatory action (id. at 16-17, citing and quoting Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 106 (2d Cir. 1989)).

Plaintiff points to apparent issues of fact as to the job title and functions given to Trimble following plaintiff's termination (see id. at 18).

**DISCUSSION**

I.      Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.     Title VII Standard

An employee alleging a violation of Title VII can prove employment discrimination under a three-step, burden shifting test established in McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973). First, plaintiff has the burden of proving "by a preponderance of the evidence a prima facie case of discrimination," Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). To establish a prima facie case, the plaintiff must show (a) membership in a protected class; (b) qualification for the position; (c) an adverse employment action; and (d) circumstances that give at least minimal support to an inference of discrimination, Fagan v. New York State Elec. & Gas Corp., 186 F.3d 127, 132 (2d Cir. 1999). Plaintiff's burden is a minimal one, she "creates a presumption that the employer unlawfully discriminated against the employee" when she sets forth facts sufficient to establish a prima facie case, Burdine, supra, 450 U.S. at 254.

If plaintiff presents a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reasons for the [adverse employment action]," id. at 253 (quoting McDonnell Douglas, supra, 411 U.S. at 802). If the employer presents admissible evidence supporting that legitimate reason, the presumption of discrimination created by the prima facie case is rebutted, Burdine, supra, 450 U.S. at 256. At this point, the burden shifts back to plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext of discrimination," id. at 253. (Docket No. 23, Pl. Memo. at 9-10; Docket No. 15, Def. Memo. at 7.)

This standard and burden shifting under McDonnell Douglas applies to sex discrimination claims under the New York Human Rights Law, Ferrante v. American Lung Ass'n, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 28-29 (1997); Torres v. Pisano, 116 F.3d 625, 629

n.1 (2d Cir. 1997), and for convenience the same analysis will be applied to plaintiff's state law claims as her Title VII claims. Defendant argues that plaintiff's state law claims should be dismissed for the same reason as her Title VII claims (Docket No. 15, Def. Memo. at 7 n.2).

III.     Application

The issues here are whether defendant established its entitlement to judgment as a matter of law either because plaintiff failed to make a prima facie case of discrimination, or because defendant asserted a non-pretextual, legitimate business reason for letting plaintiff go that she does not refute by the preponderance of the evidence to be mere pretext. The shifting burdens of persuasion under <u>McDonnell Douglas</u> has each party responsible for proving different aspects. This, in turn, requires discussion of whether plaintiff was qualified to remain at the scaled back Empire as a field reporter with definite expectations to act as a fill-in anchor, despite her limited prior experience as an anchor or whether these new obligations were merely pretextual. Another issue is whether plaintiff has shown a material issue of fact to deprive summary judgment here.

Before Empire's retrenchment, it had four anchors and one field reporter (plaintiff) as its on-air staff, with the reporter having fill-in anchor obligations that were not expected to be used (Docket No. 29, Def. Reply Memo. at 2; <u>see</u> Docket No. 16, Def. Statement ¶ 64); after the reduction there were two anchors and one reporter with definite fill-in anchor obligations (Trimble). The reporting position went from plaintiff to Trimble, while one of the anchor positions was retained by Bristol, who had less seniority than plaintiff.

A.     Did Plaintiff Prove a <u>Prima Facie</u> Case?

Clearly, plaintiff is within a protected class as a female under Title VII. Issues, however, arise regarding her qualifications for the position available in the scaled back Empire (that of a

13

fill-in anchor or "reporter/anchor"), see Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 111 (2d Cir. 1992), and the circumstances that give at least minimal support to an inference of discrimination.

As the sole female television on-air talent that was let go when males were reassigned her duties or were retained despite lacking her seniority leads to the presumption of the circumstances that support an inference of discrimination to prove a prima facie case. But the one male that was reassigned, Trimble, had more experience overall and as an anchor than plaintiff, and could be seen as fitting into the leaner Empire's need to have multiple skilled personnel

The parties dispute plaintiff's ability (or opportunities) to serve as a fill-in anchor (compare Docket No. 16, Def. Statement ¶¶ 46-47, 50-51, 53-54, 62-63, 65, 69, 72 with Docket No. 23, Pl. Statement of Disputed Facts ¶¶ 14, 18-20, 22, 25) and whether the remaining male anchors also reported (compare Docket No. 16, Def. Statement ¶ 7; Docket No. 26, Def. Reply Statement ¶ 1 with Docket No. 23, Pl. Statement of Disputed Facts ¶ 1). Plaintiff makes much of the titles used (or not used) by Empire or defendant, but what is material here is the duties expected of the employees after the reduction rather than the job title. Where the duties of the reporter after the reduction expressly included those of an anchor and Empire expected the leaner staff to perform multiple functions, the question is whether plaintiff was as qualified as her former colleagues to perform these enhanced duties. The only evidence plaintiff provides for her qualifications in this new order was her belief (despite the absence of opportunity and experience) that she could step in and fill in as an anchor (Docket No. 23, Pl. Aff. ¶ 51, Ex. A, Pl. EBT Tr. at 148-49) and reference to her practice anchor tape and her immediate supervisor's

appraisal of that practice tape (Docket No. 23, Pl. Statement ¶¶ 11-13, 15; cf. Docket No. 16, Def. Statement ¶¶ 42-44, 48). Plaintiff's self-serving statement alone would not raise an issue of fact, see Belgrave v. Pena, No. 98 Civ. 2517, 2000 U.S. Dist. LEXIS 13141, at *33-34 (S.D.N.Y. Sept. 13, 2000) (Pitman, Mag. J.), but, as held in Belgrave, the perception of the decision-maker is relevant, id. at *34. Here, plaintiff produces sufficient evidence of an issue of fact on that perception, presenting evidence on Empire management's view of plaintiff's qualification to serve as a fill-in anchor as well perform her reporting duties. These issues of fact are material as to plaintiff's initial burden.

      B.     Defendant's Legitimate Business Reason

Shifting the burden to defendant, Empire argues that it terminated plaintiff as part of a reduction in force as Empire was downsized to a limited production network that showed a few live broadcasts. As presented at oral argument, Empire was looking for fewer staffers but those employees needed to do multiple tasks. Plaintiff does not argue that defendant impermissibly redefined the role of its remaining anchor to have reporting duties, or that the remaining reporter have definite fill-in anchor obligations. Thus, defendant has established its burden under the second part of the McDonnell Douglas test and rebutted the presumption of discrimination raised by plaintiff in her prima facie case.

      C.     Whether the Defendant's Reason Is Pretext

Plaintiff contends that defendant's espoused reasons for terminating plaintiff were pretextual, that defendant is playing a "shell game" with the titles of the male employees retained (Docket No. 23, Pl. Memo. at 18). But, the relevant inquiry is not the titles used but the job functions that were required for the remaining on-air staff.

15

Plaintiff now has the burden "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext of discrimination," Burdine, supra, 450 U.S. at 253.  Defendant distinguishes Montana v. First Federal, supra, 869 F.2d 100, which plaintiff relies upon[7] because the additional suspicious circumstances in Montana, such as the hiring of a less experienced replacement and increasing the staff after the reduction in force, id. at 105, 106, that would indicate defendant's reasons were pretextual were not present here (Docket No. 29, Def. Reply Memo. at 7-8).  In Montana, the Second Circuit affirmed the dismissal of that plaintiff's sex discrimination claim because she failed to show, among other things, the percentages of male and female management employees or that the defendant had discriminatory attitudes about women, id. at 107.  Here, plaintiff has not produced evidence of gender bias in defendant's decisions to retain Bristol as an anchor and retain Trimble as a reporter with anchor duties.  See Belgrave, supra, 2000 U.S. Dist. LEXIS 13141 at *34-35.  The record is absent of other indications of gender bias against plaintiff or other female employees--plaintiff conceding the absence of such bias--that would support the conclusion that Empire's expressed reason was pretext.  Therefore, on the third part of McDonnell Douglas, defendant **ought** to receive summary judgment dismissing this case.

## CONCLUSION

Based upon the above, it is recommended that defendant's motion (Docket No. 14) summary judgment be **granted** as for plaintiff's erroneously alleged retaliation claims (the second and fourth causes of action) and **granted** as to the remaining claims.

---

[7]Plaintiff also cited this case during argument of the motion.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                                                                                                */s/ Hugh B. Scott*
                                                                                                                             Hon. Hugh B. Scott
                                                                                                          United States Magistrate Judge

Dated: Buffalo, New York
       May 30, 2006